UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MASTER INSULATION, INC.** | * | **CIVIL ACTION NO. 23-5638** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **GH MECHANICAL & SERVICES, LLC,** | * | **MAGISTRATE JUDGE** |
| **C.D.W. SERVICE, LLC, ST. AUGUSTINE** | | **KAREN WELLS ROBY** |
| **HIGH SCHOOL, INC., AND LEXON** | * | |
| **INSURANCE COMPANY** | | |

\*    \*    \*    \*    \*    \*    \*    \*

## ORDER & REASONS

Before the Court is a Motion for Entry of Default Judgment filed by Plaintiff Master Insulation, Inc. ("Master Insulation") against Defendant GM Mechanical & Services, LLC ("GH Mechanical"). R. Doc. 46. The Clerk entered a preliminary default against GH Mechanical on April 9, 2024. R. Doc. 25. GH Mechanical has not appeared in this case, nor contacted the Court to its knowledge. Having considered the briefing, record, and applicable law, the Court will **GRANT IN PART** Master Insulation's motion for the following reasons.

### I.    BACKGROUND

GH Mechanical hired Master Insulation to complete insulation work on a construction project at St. Augustine High School. R. Doc. 2 at 2–3. The January 2022 subcontract, together with its two authorized change orders (the "Insulation Agreement") yielded a total contract price of $346,500.00. *Id.* at 3. Master Insulation brings the instant suit alleging *inter alia* that GH Mechanical failed to pay the full contract price despite its proper performance. *See generally id.*

Plaintiff avers that it performed all its obligations in strict accordance with the Insulation Agreement, in a thorough and workmanlike manner, and free from defects in both materials and workmanship. *Id.* at 3. It also regularly invoiced GH Mechanical as it completed performance. *Id.* The Insulation Agreement attached to the Complaint provides that GH Mechanical "shall pay

1

[Master Insulation] monthly Progress Payments" in accordance with certain listed terms. R. Doc. 2-2 at 3. However, beyond making an initial payment of $5,482 in February 2022, GH Mechanical allegedly failed to make payments on the remaining five invoices. R. Doc. 2 at 3; *see also* R. Doc. 48. Thus, Master Insulation contends that GH Mechanical owes it the remaining outstanding principal balance of $341,018.00. R. Doc. 2 at 3–5.

As a result of GH Mechanical's failure to pay, Master Insulation brought the instant suit and asserted claims for breach of contract pursuant to La. Civ. Code art. 1906, suit on open account pursuant to La. R.S. § 9:2781, failure to make prompt payment pursuant to La. R.S. § 9:2784, and unjust enrichment pursuant to La. Civ. Code art. 2298. R. Doc. 2 at 5–7, 10. It also asks for attorneys' fees as provided by La. R.S. § 9:2781 as well as interest and costs. *Id.* at 6.

Master Insulation served GH Mechanical with its complaint on November 28, 2023. R. Doc. 16. GH Mechanical failed to file its responsive pleadings within the twenty-one-day period. Fed. R. Civ. P. 12(a)(1)(A). As a result, Master Insulation filed a Motion for Entry of Default on April 8, 2024. R. Doc. 24. The Clerk entered a preliminary order of default the next day. R. Doc. 25. By the end of October 2025, about a year and a half later, GH Mechanical still had not appeared in this suit; as there had been no other relevant action by Plaintiff in this case, the Court ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute. R. Doc. 43. Plaintiff then filed this motion for entry of final default. R. Doc. 46.

## II.    PRESENT MOTION

Master Insulation seeks a default judgment against GH Mechanical as a consequence of its unresponsiveness to the claims asserted in Plaintiff's September 2023 complaint. R. Doc. 46. In support of its position that default judgment is appropriate, Plaintiff submitted two affidavits of Dana Hansen, its Finance Manager, who attested to details of the contract price, the six invoices,

and GH Mechanical's payment history. R. Docs. 46-2, 48-1. Master Insulation also submitted the subcontract and its change orders, copies of paid and unpaid invoices, and Master Insulation's internal accounting report for GH Mechanical. R. Docs. 46-1, 48-2. Master Insulation avers that default judgment is procedurally proper, that it has pleaded sufficient facts to demonstrate its entitlement to the entry of judgment in its favor on all four of its legal theories against GH Mechanical, and that it is entitled to relief in the total amount of $502,076.10, which is the aggregate of the outstanding principal balance owed under the contract, statutory penalties, interest, and attorneys' fees. R. Doc. 46-1 at 5–10. GH Mechanical has filed no response to Master Insulation's motion.

### III.    APPLICABLE LAW

To attain a default judgment, a plaintiff must first file a motion for entry of default. Fed. R. Civ. P. 55(a). The motion must have attached an affidavit that notes the facts of the defendant's "fail[ure] to plead or otherwise defend." *Id*. The court clerk must enter the default when the plaintiff's documentation is in order. *Id.* Thereafter, the party seeking final judgment must apply to this Court for a default judgment if the plaintiff's claim is not for a sum certain. Fed R. Civ. P. 55(b). Although the court must accept the plaintiff's allegations against the defendant as truthful, it is not obliged to recognize the amount of damages sought as fact. *U.S. For Use of M-CO Constr., Inc. v. Shipco Gen., Inc*., 814 F.2d 1011, 1014 (5th Cir. 1987).

The petitioner "is not entitled to a default judgment as a matter of right." *Gather v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). The district judge possesses the discretionary authority to enter a default judgment. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). To determine whether to enter a default judgment, the Court must consider "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive

merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 16-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)); *Nishimatsu Constr. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

First, to determine if the entry of default judgment is procedurally warranted, two requisites must be met. The movant must make "a prima facie showing" that the Court possesses personal and subject matter jurisdiction over the defendant in default. *Viahart, LLC v. Does 1-54*, No. 18-604, 2021 WL 777083, at *3 (E.D. Tex. Jan. 29, 2021), *aff'd sub nom*., No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022). If the movant makes this prima facie showing, the Court will then assess six factors to determine the necessity of the default judgment. *Lindsey*, 161 F.3d at 893. The Court must decide "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.*

The second requisite of the default judgment analysis requires the Court to evaluate whether the plaintiff's pleading adheres to the requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015). Although the defendant's default marks its admission to the plaintiff's allegations, the Court cannot enter a default judgment without finding a sufficient factual basis within the pleading. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, the facts within the complaint must "'raise a right to relief above the speculative level' and into the 'realm of plausible

liability.'" *Viahart*, 2021 WL 777083, at *4 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 n.5 (2007)).

The third and final prong of the analysis requires the Court to determine damages. Rule 55(b)(2) of the Federal Rules of Civil Procedure states that a "court may conduct hearings . . . when, to enter of effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2). This clause confers a broad discretionary authority to the district court. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). No hearing need be conducted when the plaintiff seeks liquidated or calculable damages rather than unliquidated damages. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). The Court here has determined that Plaintiff seeks calculable damages, so a hearing was not necessary.

## IV.    ANALYSIS

The Court finds that all three default judgment requirements are satisfied by the record in this case. Both procedural tests are satisfied: Plaintiff pleaded sufficient facts to make a prima facie showing of jurisdiction, and the Court, as explained below, finds that the six procedural factors support an entry of default judgment. Next, the Court concludes that Plaintiff's pleadings contain sufficient facts to raise its right to relief above a speculative level on two of its four claims. Finally, the amount of damages is ascertainable on the record before the Court. The Court addresses each of these conclusions below.

### A.  Default Judgment is Procedurally Proper.

Two separate analyses are required to be conducted before determining that default judgment is procedurally proper. First, the plaintiff must make a prima facie showing that the Court has personal and subject matter jurisdiction. *See Viahart*, 2021 WL 777083, at *3. Plaintiff pleaded that this Court has subject matter jurisdiction because the parties are completely diverse and the

amount-in-controversy exceeds $75,000.00. R. Doc. 2 at 2; *see also* 28 U.S.C. § 1332(a). Master Insulation is a Florida corporation with its principal place of business in Florida. R. Doc. 5. GH Mechanical, upon Plaintiff's information and belief, is a Texas limited liability company whose two members are domiciled in Louisiana and Texas. R. Doc. 2 at 1. Thus, the parties are completely diverse. The amount in controversy is also satisfied because Plaintiff seeks to recover the outstanding balance owed under the contract of $341,018.00, among other money damages. *Id.* at 5. Finally, the Court has personal jurisdiction over GH Mechanical since one of the members is domiciled in Louisiana. *Id.* at 1. Plaintiff has made a prima facie showing of both personal and subject matter jurisdiction.

Second, the Court must find that the six-factor test shows that default judgment is procedurally proper. *Viahart*, 2021 WL 777083, at *3. The Fifth Circuit considers the following six factors in determining whether a default judgment is necessary: "(1) whether material issues of fact are at issue, (2) whether there has been substantial prejudice, (3) whether the grounds for default are clearly established, (4) whether the default was caused by a good faith mistake or excusable neglect, (5) the harshness of a default judgment, and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

All six factors favor the entry of default judgment in this case. First, there are no issues of material fact because GH Mechanical "by [its] default, admits the plaintiff's well-pleaded allegations of fact." *See Nishimatsu*, 515 F.2d at 1206. Second, the record does not suggest that GH Mechanical has been prejudiced in any way. To the Court, Master Insulation is the party prejudiced by GH Mechanical's failure to appear and defend itself in this suit because "the adversarial process has been brought to a halt" and it could be difficult for Master Insulation to recover damages on its successful claim. *See Viahart*, 2021 WL 777083, at *3. Third, GH

Mechanical's failure to answer, coupled with Master Insulation's proper adherence to all default judgment procedural rules, demonstrates that the grounds for default are clearly established. Fourth, there is no record evidence to show that GH Mechanical's absence in this suit is caused by good faith mistake or excusable neglect. Fifth, default judgment is not unduly harsh here because GH Mechanical has had over two years to respond to Master Insulation's allegations, so it has had ample opportunity to defend against Plaintiff's claims. Finally, the Court sees no basis for it to be obligated to set the default aside on GH Mechanical's motion.

Accordingly, the Court finds that Plaintiff has demonstrated that a default judgment is procedurally warranted.

### B. Master Insulation Pleaded Sufficient Facts to Show Entitlement to Default on Two of Its Claims.

Master Insulation brought four distinct claims against GH Mechanical: breach of contract pursuant to La. Civ. Code art. 1906, suit on open account pursuant to La. R.S. § 9:2781, failure to make prompt payment pursuant to La. R.S. § 9:2784, and unjust enrichment pursuant to La. Civ. Code art. 2298. R. Doc. 2 at 5–7, 10. Before the Court can enter default judgment on any of Plaintiff's four legal theories, it must determine whether the supporting factual allegations are well-pleaded and in accordance with Rule 8 of the Federal Rules of Civil Procedure. *See Nishimatsu*, 515 F.2d at 1206; *Wooten*, 788 F.3d at 498. The Court finds that Master Insulation has pleaded sufficient facts to support its entitlement to default judgment on two of its four asserted claims.

### 1. Breach of Contract

Because this case is based on diversity jurisdiction, Master Insulation bases its breach of contract claim in Louisiana law. In Louisiana, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. "A contract

is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927. Every contract also includes an obligation for the parties to perform in good faith. La. Civ. Code art. 1983. "'The central elements of a breach of contract action are the existence of a contract, the party's breach thereof, and damages.'" *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 973 (M.D. La. Sept. 29, 2020) (quoting *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108–09). "'An obligor is liable for damages caused by his failure to perform a conventional obligation.'" *Favrot*, 2010-0986, 68 So. 3d at 1109 (quoting La. Civ. Code art. 1994).

Master Insulation implicitly maintains that the Insulation Agreement constitutes a valid, binding contract under Louisiana law. *See* R. Doc. 46-1 at 5. The Court finds no evidence in the record to suggest that this contract is invalid. The Insulation Agreement obligated Master Insulation to perform certain insulation services with certain materials, and in exchange, GH Mechanical was obligated to pay the contract price. *Id.* at 5–6; *see also* R. Doc. 46-2 at 4–16. Based on Master Insulation's internal account report, R. Doc. 48-1 at 6, GH Mechanical has breached its obligations by failing to pay five of the six invoices issued by Master Insulation pursuant to the Insulation Agreement. The Court concludes that GH Mechanical is liable for the amounts it owes to Master Insulation under the Insulation Agreement, which totals $341,0180.00. R. Doc. 48-1.

### 2. Suit on Open Account

La. R.S. § 9:2781 provides that claimants may recover reasonable attorneys' fees for the prosecution and collection of an open account claim if the amount owed is not paid within thirty days after sending written demand. An open account is defined as "any account for which a part or all of the balance is past due whether or not the account reflects one or more transactions and

whether or not at the time of contracting the parties expected future transactions." *Id.* at (D). "In determining whether a contract falls under the open account statute, courts in Louisiana consider, among other things, whether the 'total cost or price [is] . . . left open or undetermined.'" *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 22 F. Supp. 3d 232, 238 (M.D. La. 2022) (quoting *Factor King, LLC v. Block Builders, LLC*, 193 F. Supp. 3d 651, 658 (M.D. La. 2016)). Because the open account statute imposes attorneys' fees awards as a penalty, it must be strictly construed. *24/7 Restoration Specialists, LLC v. Young*, 634 F. Supp. 3d 287, 290 (E.D. La. 2022).

Master Insulation's pleading and briefing fails to address that Louisiana courts "have consistently drawn the distinction between open accounts and ordinary contracts." *Cong. Square Ltd. P'ship v. Polk*, No. 10-317, 2011 WL 837144, at *4–6 (E.D. La. Mar. 4, 2011) (discussing Louisiana cases); *see also Diamond Servs. Corp. v. Cobbs, Allen & Hall of La., Inc.*, No. 2024-0085 (La. App. 1 Cir. 9/27/24), 405 So. 3d 813, 817 ("To the extent a cause of action for breach of contract and one for open account are mutually exclusive, and [claimant] cannot *succeed* under both theories of recovery, Article 892 authorizes *pleading* both causes of action in one judicial demand, if pled in the alternative . . . ."). However, due to GH Mechanical's failure to appear in this suit and defend against these claims, this Court does not have the benefit of extensive briefing that could resolve any potential issues related to Master Insulation's bringing of both claims.

However, a court in this district recently entered default judgment in favor of a plaintiff on both breach of contract and suit on open account theories. *See Tempest Storm Rentals, LLC v. Asomeo Env't Restoration Indus. LLC*, No. 24-2421, 2025 WL 1235528 (E.D. La. Apr. 29, 2025). In *Tempest Storm Rentals*, the parties had entered into a lease agreement for trucks and other equipment, and the plaintiff brought suit alleging that the defendant did not pay the regularly invoiced rental fees over the nine-month period that the plaintiff continuously rented its equipment

to the defendant. *Id.* at 1. That court did not wrestle with questions of whether the plaintiff could prevail on both theories of breach of contract and suit on open account under Louisiana law. *See generally id.* Instead, the district court assessed whether the plaintiff had pleaded sufficient facts and submitted relevant record evidence to support each claim. *See id.* at 3–4. This Court will do the same.

"An open account necessarily involves an underlying agreement between the parties on which the debt is based." *Signlite, Inc. v. Northshore Serv. Ctr., Inc.*, No. 2005-2444 (La. App. 1 Cir. 2/9/07), 959 So. 2d 904, 907. "To distinguish between an open account and an ordinary contract, courts consider factors such as '(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings.'" *24/7 Restoration Specialists*, 634 F. Supp. 3d at 290 (quoting *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007)). "To recover on an open account, 'the creditor must first prove the account by showing that it was kept in the ordinary course of business and by introducing supporting testimony regarding its accuracy.'" *Tempest Storm Rentals*, 2025 WL 1235528, at *3 (quoting *Bisso & Miller, LLC v. Marsala*, No. 16-585 (La. App. 5 Cir. 3/15/17), 215 So. 3d 469, 472). The debtor then has the opportunity to prove the inaccuracy of the account or that it is entitled to certain credits. *Id.*

Here, it is plausible that Master Insulation could prevail on an open account claim. The Insulation Agreement does not have a definite time period and was subject to change orders and increased prices as the contractual relationship developed. *See* R. Doc. 46-2. Moreover, at least one Louisiana court of appeal—with the benefit of the case having made it to the summary judgment stage—has found that a plaintiff who brought a suit on open account could prevail when

10

the subject construction agreement contemplated a definite scope of construction work for a fixed price. *Advanced Leveling & Concrete Sols. v. Lathan Co.*, No. 2020-0040 (La. App. 1 Cir. 12/10/20), 316 So. 3d 509, 513–14. The affidavits of Master Insulation's Finance Manager demonstrate that the unpaid invoices at issue here were issued in the ordinary course of business and accurately reflect the amounts GH Mechanical still owes under the Insulation Agreement. Additionally, Master Insulation represents that it demanded payment of the full principal amount over thirty days ago, in accordance with La. R.S. § 9:2781(A). Thus, Master Insulation's right to relief has been raised above a speculative level based on the record evidence and pleading for its open account claim.

### 3. Failure to Make Prompt Payment

Master Insulation contends that GH Mechanical violated Louisiana's prompt payment statute and thus is liable for statutory penalties and reasonable attorneys' fees. R. Doc. 46-1 at 7–9; R. Doc. 2 at 6–7. The "[l]ate payment by contractors to subcontractors and suppliers" statute provides:

> A. When a contractor receives any payment from the owner for improvements to an immovable . . . the contractor shall promptly pay such monies received to each subcontractor and supplier in proportion to the percentage of work completed  . . . . **Further, whenever a subcontractor receives payment from the contractor, the subcontractor shall promptly pay such monies received to each sub-subcontractor and supplier in proportion to the work completed**.
>
> . . .
>
> C. If the contractor or subcontractor without reasonable cause fails to make any payment to his subcontractors and suppliers within fourteen consecutive days of the receipt of payment from the owner for improvements to an immovable, the contractor or subcontractor shall pay to the subcontractors and suppliers, in addition to the payment, **a penalty in the amount of one-half of one percent of the amount due**, per day, from the expiration of the period

> allowed herein for payment after the receipt of payment from the owner. . . . In addition, the contractor or **subcontractor shall be liable for reasonable attorney fees** for the collection of the payments due the subcontractors and suppliers.

La. R.S. § 9:2784 (emphasis added). Here, Master Insulation pleaded in its Complaint that "[u]pon information and belief, GH Mechanical," a subcontractor to the prime contractor, "received payment for all or part of the insulation materials and services provided by Master Insulation more than fourteen consecutive days ago." R. Doc. 2 at 7. It further alleged that "GH Mechanical's failure to pay is without probable cause." *Id.*

Master Insulation cites no record evidence to establish that the prime contractor C.D.W. Services, LLC ("CDW") did indeed pay GH Mechanical for the amounts invoiced to GH Mechanical by Master Insulation. *See* R. Doc. 46-1 at 7 (citing only to the Complaint to support its position that "[a]s shown, GH Mechanical received payment for all or part of the insulation materials and services provided by Master Insulation more than fourteen consecutive days prior to Master Insulation filing suit."). Indeed, upon closer inspection of the evidence put into the record by CDW during its evidentiary hearing for its own default judgment against GH Mechanical, CDW may not have been aware of Master Insulation's invoices to GH Mechanical on the project as Master Insulation completed its work; a spreadsheet suggests that CDW may not have been aware of Master Insulation's invoices until Master Insulation sent CDW a lien enforcement letter on October 26, 2022 and follow-up letter on February 2, 2023. *E.g*, R. Doc. 33-14 (copies of letters); 33 (spreadsheet titled "St. Augustine High School – Backcharges to GH Mechanical Subcontract . . . ." listing Master Insulation under a section titled "CLAIM/LIEN").

In short, Master Insulation did not carry its burden to demonstrate that GH Mechanical received payment from CDW at any point prior to it sending the October 26, 2022 letter to Master Insulation. The statute's payment provisions are not triggered until the subcontractor receives a

12

payment from the prime contractor. Without any citation to payments from CDW to GH Mechanical that could then be immediately paid to Master Insulation, the Court cannot enter default judgment in favor of Master Insulation on this claim.

Petitioners are "not entitled to a default judgment as a matter of right." *Gather*, 75 F.3d at 212. They must plead short, plain statements to support that they are entitled to the requested relief. Fed. R. Civ. P. 8(a)(2). These factual allegations must "'raise a right to relief above the speculative level' and into the 'realm of plausible liability.'" *Viahart*, 2021 WL 777083, at *4. Here, Master Insulation pleaded that "[u]pon information and belief, GH Mechanical received payment for all or part of the insulation materials and services provided by Master Insulation." R. Doc. 2 at 7. This is the only relevant factual allegation in the Complaint that speaks to Master Insulation's entitlement to default judgment for GH Mechanical's violation of Louisiana's prompt payment statute. Without other record evidence to support Master Insulation's claim, this fact does not raise Master Insulation's right to relief above a speculative level. Master Insulation is not entitled to default judgment on its prompt payment claims.

### 4. Unjust Enrichment

In Master Insulation's motion for entry of default judgment, it states that "[o]nly in the alternative, and only if the Court were to find [that] Master Insulation has not shown entitlement to payment under breach of contract, open account, or prompt payment statutes, Master Insulation seeks compensation under a theory of unjust enrichment." R. Doc. 46-1 at 7. As the Court has determined that Master Insulation is entitled to default judgment on its breach of contract and open account claims, it will not address whether it is entitled to default judgment on its unjust enrichment claim. *E.g.*, *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024) (citations omitted) ("While a plaintiff in Louisiana generally may not plead a claim for unjust

enrichment alongside another legal theory, unjust enrichment is still available when the at-issue contract is a legal 'nullity.'"); *Patterson v. Dean Morris, LLP*, No. 08-5014, 2011 WL 1743617, at *7 (E.D. La. May 6, 2011) (quoting *Walters v. MedSouth Rec. Mgmt., LLC*, No. 2010-353 (La. 6/4/10), 38 So. 3d 243, 244) ("'The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided.'").

## C. Master Insulation is Entitled to Relief.

The Court now turns to address damages. Although the Court must accept the veracity of Master Insulation's well-pleaded allegations, it is not obligated to take the amount of requested damages as fact. *U.S. For Use of M-CO, Const., Inc.*, 814 F.2d at 1014. It is upon the Court "to fix the amount of damages" as it sees fit. *Wright v. E-Sys., LLC*, No. 12-4715, 2016 WL 7802996, at *2 (N.D. Tex. Dec. 20, 2016). While Rule 55 of the Federal Rules of Civil Procedure contemplates a court's ability to conduct a hearing to determine the appropriate amount of damages, a hearing does not need to be conducted when the Court can mathematically calculate the amount of damages based on the pleadings and record evidence. *E.g.*, *James*, 6 F.3d at 310. Here, damages are calculable, so a hearing was unnecessary.

### 1. Damages for Breach of Contract/Amount Owed on Open Account

Master Insulation seeks a total of $341,018.00 contractual/open account in damages because it is the outstanding principal sum that remains due under the Insulation Agreement. R. Doc. 2 at 5–6. Master Insulation attached the Insulation Agreement to its Complaint, and the original contract with its two change orders clearly outline that the total contract price is $346,500.00. R. Doc. 2-2. Master Insulation submitted evidence of GH Mechanical's sole payment of $5,482.00. R. Doc. 48, 48-1. Thus, e Master Insulation is entitled to an award of the remaining amount due under the Insulation Agreement, or $341,018.00. *See also* R. Doc. 48-1 (Affidavit of

Master Insulation's Finance Manager, attesting that GH Mechanical has an outstanding balance of $341,018.00 owed to Master Insulation).

### 2. Interest on the Principal Amount

Master Insulation seeks an award of prejudgment interest pursuant to La. Civ. Code art. 2000. "State law governs the award of prejudgment interest in diversity cases." *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994). Under Louisiana law, "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due." La. Civ. Code art. 2000. The rate of interest can either be agreed to by the parties or, in the absence of an agreement, set at the rate of legal interest as fixed by La. R.S. § 9:3500. *Id.*

Master Insulation did not reference, and the Court did not find, a fixed interest rate in the Insulation Agreement. Accordingly, interest on the amount owed under the Insulation Agreement will be assessed at the legal rate fixed in La. R.S. § 9:3500. In accordance with the statute, the interest is measured from the time performance is due. The invoices attached to the Complaint state that Master Insulation issued its final invoice on September 8, 2022, with a net of thirty days. R. Doc. 2-3 at 6. Thus, prejudgment interest shall be calculated from October 8, 2022, using the fixed rate as provided for in La. R.S. § 9:3500.

### 3. Attorneys' Fees and Costs

Master Insulation is entitled to an award of attorneys' fees and costs because it prevailed on its open account claim. La. R.S. § 9:2781(A) ("any person [who] fails to pay an open account . . . shall be liable to the claimant for reasonable attorney fees . . . when judgment on the claim is rendered in favor of the claimant"). When attorneys' fees are awarded, the Court engages in a two-step process to determine whether the claimed fees are reasonable. *In re Fender*, 12 F.3d 480, 487

(5th Cir. 1994). The first step requires the Court to calculate the lodestar by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After the lodestar has been calculated, the Court may then "adjust[] the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Fender*, 12 F.3d at 487. The party requesting fees bears the burden of proving that the rates charged and hours expended are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

The Court will first calculate the lodestar by determining the reasonable hourly rates and reasonable number of expended hours. It will then consider whether the lodestar calculation should be adjusted. Finally, the Court will consider an award for costs.

### a.    Lodestar: Hourly Rate

The Court must first determine the reasonable hourly rate for each participating attorney. "'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum*, 465 U.S. at 895). "[T]he burden is on the fee applicant to produce satisfactory evidence— in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. "An attorney's requested hourly rate is prima facie reasonable when [he] requests that the lodestar be computed at [his] 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested." *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing

16

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). "However, the Court may reduce the hourly rate if it determines that the requested rate is not within the range of prevailing market rates." *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, 776 F. Supp. 3d 419, 477 (E.D. La. 2025) (citing *Richard v. St. Tammany Par. Sheriff's Dep't*, No. 17-9703, 2022 WL 4534728, at *11 (E.D. La. Sept. 28, 2022), *appeal dismissed sub nom. Richard v. Smith*, No. 22-30497, 2023 WL 2845201 (5th Cir. Jan. 27, 2023)).

Here, Master Insulation seeks attorneys' fees for work completed by Brad Barback (partner), Josh Populas (associate), and Jeffrey Matthews (paralegal) between 2023–2025 and totaling $29,761.50. R. Doc. 46 at 9–10; 46-3 at 3. Master Insulation submits two affidavits of Brad Barback, a partner at McGlinchey Stafford, PLLC, to support its fees request. R. Doc. 46-3, 49. Mr. Barback explains that he is a partner with eleven years' experience who focuses his practice on commercial civil litigation and construction litigation. R. Doc. 46-3 at 2. He attested that he reduced his standard billable rates in this case by 33%, so his hourly rates in this matter were $345 in 2023, $370 in 2024, and $390 in 2025. R. Doc. 46-3 at 2.

The Court finds that Master Insulation did not submit sufficient record evidence to demonstrate that these requested rates were reasonable, and the Court determines that a reduction in hourly rate is warranted here. Recently, a court in this district discussed a reasonable fee award for an attorney with the same years of experience as Mr. Barback. *MGMTL*, 776 F. Supp. 3d at 480–81. In that case, an attorney with eleven years of experience requested hourly rates of $350/hour in 2020, $375/hour in 2021-2022, and $390/hour in 2023. *Id.* at 478. The court, after thoroughly reviewing rates that courts had awarded similarly situated practitioners, reduced that attorneys' hourly rate for purposes of calculating the lodestar, determining that $250/hour for 2020, $265/hour for 2021-2022, and $275/hour for 2023 were reasonable. *Id.* at 480. The Court is

17

persuaded that a similar reduction is appropriate here. Thus, Mr. Barback will be awarded an hourly rate of $275/hour for 2023, $290/hour for 2024, and $300/hour for 2025.

As for the associate, Josh Populas, Master Insulation only requests time billed in 2024 and at a rate of $295/hour. The record is silent as to Mr. Populas's years of experience, practice area focuses, or any other relevant information to assist the Court in determining a reasonable hourly rate. As such, the Court will assume that Mr. Populas falls within the range of 0-5 years of practice. The Court is familiar with the local legal market and finds that, without evidence to justify Mr. Populas's hourly rate, $295/hour for an associate with 0-5 years' experience is not within the customary local range of rates charged. "Judges in this district award attorneys' fees in the amount of $200 for work performed by an associate with less than five years of experience." *Girod LoanCo, LLC v. Heisler*, No. 19-13150, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020). As such, the Court will reduce Mr. Populas's hourly rate to $200/hour for work performed in 2024.

Finally, Master Insulation requests fees for Jeffrey Matthews, paralegal, at a rate of $175/hour. The record is silent as to his years of experience or other relevant information to support his rate's reasonableness. The Court then employs its own knowledge and experience to form an independent judgment as to the reasonableness of the requested fees. *U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, No. 21-1074, 2023 WL 4996550, at *5 (E.D. La. June 23, 2023). "[C]ourts in this district have found rates between $100 and $150 per hour to be reasonable and within the prevailing market rates for paralegal work." *Id.* at *6. Considering the dearth of evidence, the Court will reduce Mr. Matthews's hourly rate to $100/hour.

### b. Lodestar: Number of Hours

District courts have broad discretion in determining whether the time expended was reasonable. *Haygood v. Morrison*, 116 F.4th 439, 447 (5th Cir. 2024). But importantly, it is the fee

18

seeker's responsibility to show the reasonableness of the hours billed and, accordingly, they are charged with proving that they exercised billing judgment. *Walker v. City of Mesquite, Tex.*, 313 Ff.3d 246, 251 (5th Cir. 2002). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Moreover, billing records should not be "so vague or unilluminating that they preclude[] meaningful review," and should "contain[] the date, the number of hours spent (calculated to the tenth of an hour), and a short but thorough description of the services rendered." *League of United Latin Am. Citizens # 4554 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dep't. of Hous. & Urb. Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (citation omitted).

Mr. Barback avers that the 83 total hours spent by him, Mr. Populas, and Mr. Matthews are reasonable because of the complexity of this matter and its multiple claims, as well as the amount money at stake. R. Doc. 46-3 at 3–4. He submits that he excluded hours spent on collection attempts on this matter prior to filing suit, as well as hours spent collecting on related matters. *Id.* at 3. He does not explain, however, which line items in his bills that he excluded in his time calculations, if any. *Compare* R. Doc. 46-3 *with* R. Doc. 49.

The Court's own review of the bills reveals the following total hours billed based on the record evidence as compared to the total hours Master Insulation seeks to be compensated:

| Attorney/Paralegal | Year | Hours billed | Hours sought |
|---|---|---|---|
| Brad Barback | 2023 | 13.6 | 4.1 |
| | 2024 | 50.2 | 50.2 |
| | 2025 | 21.9 | 15.9 |
| Josh Populas | 2024 | 11 | 11.1[1] |
| Jeffrey Matthews | 2024 | 1.7 | 1.7 |
| | Total: | 98.4 | 83 |

R. Doc. 46-3 at 3; 49. These calculations are based on the bills in the record which the Court observes does not include a bill for services rendered in February 2024. *See* R. Doc. 49. Thus, based on the record evidence, Master Insulation reduced its billed hours by 15.65% for purposes of this fee application.

After its own careful review of the bills, the Court concludes that the bills largely reflect the exercise of billing judgment and are reasonable. However, Master Insulation does not explain which hours from its bills it decided to exclude in its calculation of 83 hours. Moreover, Mr. Barback's affidavit states that he did not include in the fee request any "hours spent collecting on matters other than [this] litigation" nor "hours spent on collection attempts on this matter prior to filing suit." R. Doc. 46-3 at 3. From this statement, the Court cannot determine if the 15.65% reduction of hours is related to the hours Mr. Barback referenced in his affidavit or related to hours that he otherwise wished to include in his fee application but did not after exercising billing judgment. "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker*, 99 F.3d at 770. From the Court's review of the record, it finds that a 10% reduction is warranted.

### c. The Lodestar Calculation

The lodestar is the result of multiplying the number of hours reasonably expended by the

---

[1]    This time discrepancy was not explained in any briefing or record evidence, but the Court's own review revealed that Master Insulation failed to include their bill for services rendered in February 2024. *See* R. Doc. 49. The Court believes this caused any numerical discrepancies between counsel's and the Court's calculations.

prevailing hourly rate in the community. Accordingly, the following reflects the Court's fee award determination:

| Attorney/Paralegal | Year | Hours sought | 10% reduction | Hourly rate | Totals |
|---|---|---|---|---|---|
| Brad Barback | 2023 | 4.1 | 3.7 | $275 | $1,017.50 |
| | 2024 | 50.2 | 45.2 | $290 | $13,108.00 |
| | 2025 | 15.9 | 14.3 | $300 | $4,290.00 |
| Josh Populas | 2024 | 11[2] | 9.9 | $200 | $1,980.00 |
| Jeffrey Matthews | 2024 | 1.7 | 1.5 | $100 | $150 |

Therefore, using the lodestar calculation, Master Insulation is entitled to a fee award of $20,545.50.

### d. *Johnson* Adjustments

After the lodestar has been calculated, the Court may then "adjust[] the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Fender*, 12 F.3d at 487. However, there is a strong presumption that the lodestar is reasonable, and it should be modified only in exceptional cases. *See Saizan*, 448 F.3d at 800. In the absence of any opposition, the Court will presume that the lodestar is reasonable and declines to apply any *Johnson* factors to reduce the award.

### e. Costs

Master Insulation does not explicitly request costs in its motion for entry of default judgment, nor does it address costs in any affidavit or other record evidence. *See* R. Doc. 46-1. "A party seeking costs bears the burden of supporting its request with evidence documenting the costs incurred and proof, when applicable, that a certain item was 'necessarily obtained for use in the case.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 709 (E.D. La. 2009) (quoting *Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991)). As Master Insulation has not

---

[2]    Because the February 2024 bill is not in the record, the Court has included in the "Hours sought" category the total hours billed by Mr. Populas in 2024 that appear in the record—not the hours sought in the fee application.

explicitly requested costs or referred the Court to any record evidence documenting any costs, the Court declines to enter an award of costs.

## V.    CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Master Insulation's motion for entry of default judgment, R. Doc. 46, is hereby **GRANTED**. Judgment will be entered in Master Insulation's favor on its breach of contract and suit on open account claims. As a result, Master Insulation is entitled to a damages award of $341,018.00, as well as prejudgment interest calculated from October 8, 2022, using the fixed rate as provided in La. R.S. § 9:3500. Additionally, Master Insulation is awarded $20,545.50 in attorneys' fees.

New Orleans, Louisiana, this 27th day of January, 2026.

THE HONORABLE ELDON E. FALLON

22